47 F.3d 1167
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leonard A. CIAK, Plaintiff-Appellee,
v.
CITY OF LOUISVILLE, et al, Defendants,
James H. Lasch, Defendant-Appellant.
 No. 93-6119.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1995.
 
 Before: KEITH, JONES AND MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant-Appellant James H. Lasch ("Officer Lasch") appeals the denial of his motion for summary judgment by the United States District Court for the Western District of Kentucky at Louisville. For the reasons stated below, we AFFIRM.
 
 I. Statement of the Case
 
 2
 Plaintiff-Appellee Leonard A. Ciak ("Ciak") filed suit against Defendant-Appellant Officer James H. Lasch ("Officer Lasch"), the City of Louisville and others (collectively "Defendants") under 42 U.S.C. Sec. 1983, alleging violation of his constitutional rights and asserting pendant state claims arising from his arrest.
 
 
 3
 On June 25, 1993, the Defendants filed motions for summary judgment. Ciak responded and filed a cross-motion for summary judgment. On August 13, 1993, the United States District Court for the Western District of Kentucky at Louisville denied all motions for summary judgment. From that Memorandum and Order, Officer Lasch appeals on the issue of qualified immunity.
 
 II. Statement of the Facts
 
 4
 On November 11, 1990, Ciak was arrested by Officer Lasch, an off-duty Louisville Police Officer, for driving under the influence. The relevant facts leading up to and surrounding the arrest were as follows.
 
 
 5
 Ciak works with the United Parcel Service as a management pilot. His current job entails testing and preparing aircraft to ensure all systems are working properly. At the time of his arrest Ciak's job focused on flight instruction for the Boeing 757 aircraft. The weekend on which Ciak was arrested he had been working a great number of hours. Part of this work involved reviewing 35 mm slides to put together a pilot training presentation. He submits this work put a great strain on his eyes. On Sunday, November 11, 1990, at 6:30 p.m., Ciak was on his way home from work when he was pulled over by Officer Lasch who informed him he had run a red light. Ciak testified in his deposition that his car stalled as he tried to go through a yellow light, that he restarted the car in the middle of the intersection and that, after he pulled over, he got out of the car to tell Officer Lasch the car had malfunctioned. Officer Lasch states he approached the car before Ciak got out of it. According to Ciak, Officer Lasch shined a flashlight in his face and asked for his driver's license and registration. Ciak said he went back to the car to get his license and registration and gave them to Officer Lasch. Ciak described Officer Lasch as "very belligerent and aggressive in his mannerisms." Officer Lasch submits that "Ciak's movements were sluggish and somewhat jerky, that his speech was a little bit slurred, and that he was slow and sloppy and lacked coordination." Officer Lasch stated in his deposition he thought Ciak was impaired by some substance. Ciak stated in his deposition that his eyes were bloodshot because he was fatigued but that he was not sluggish, jerky, slow or sloppy and did not lack coordination.
 
 
 6
 According to Ciak, Officer Lasch asked Ciak several questions concerning his employment and whether he had been drinking. Officer Lasch testified he usually doesn't ask and doesn't think he asked Ciak if he had been drinking. Ciak testified he explained to Officer Lasch that his eyes were bloodshot because of his work. Officer Lasch testified Ciak gave no excuses for his bloodshot eyes. At another point in his deposition testimony, he stated Ciak said something about 8 hours in a simulator.
 
 
 7
 Officer Lasch performed three field sobriety tests on Ciak: the nystagmus test, the alphabet test, and the heel-to-toe test. Officer Lasch submits Ciak's eyes were jerky indicating impairment during the nystagmus test. Ciak submits that his eyes were tired which might result in jerkiness and that Officer Lasch performed the test incorrectly.
 
 
 8
 The alphabet test is used, according to Officer Lasch, to determine whether an individual can follow instructions. Ciak was asked to state the letters from P to S. According to Ciak, he recited the letters from P to T, but stopped himself after realizing he had gone too far and then repeated the letters from P to S. Lasch submits Ciak only correctly performed the test on his third try.
 
 
 9
 The third field sobriety test was the heel-to-toe test which Officer Lasch testified Ciak did not perform well. Ciak testified his performance was fine. After the third test, Officer Lasch decided to arrest Ciak and called for transportation from the county police. Officer Danny Perry ("Officer Perry") responded to the call. After learning Officer Perry had a portable breathalizer, Officer Lasch administered the test to Ciak. The results were .00% for alcohol intoxication. Officer Lasch testified he was surprised by the results but believed Ciak was under the influence of something else. Officer Perry transported Ciak to the police station. In his deposition Officer Perry testified "[i]t was obvious to me that [Ciak] wasn't under the influence of alcohol." Ciak further submits that neither officer smelled alcohol on his breath. Officer Lasch admitted that Ciak was coherent and cooperative throughout the arrest.
 
 
 10
 Ciak took another set of sobriety tests at Jefferson County Corrections, passed them and registered .00% on a second breathalizer test. The Jefferson County Corrections Department Breath Test Operations Report gave an opinion that Ciak was not under the influence of alcohol. Ciak was still, however, charged with the offense of driving under the influence as Officer Lasch refused to dismiss the charge. The case was tried at a bench trial and Ciak was found not guilty.
 
 III. Discussion
 
 11
 Officer Lasch argues on appeal the district court erred in denying his motion for summary judgment alleging qualified immunity. Officer Lasch argues he is protected by qualified immunity because Ciak has not established Officer Lasch's conduct violated a clearly established right.
 
 
 12
 This court reviews a district court's qualified immunity holding de novo. Walton v. City of Southfield, 995 F.2d 1331 (6th Cir. 1993); Washington v. Newsom, 977 F.2d 991 (6th Cir.) cert. denied, 113 S.Ct. 1848 (1993).
 
 
 13
 "Police officers performing 'discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."' Washington, 977 F.2d. at 993 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).
 
 
 14
 Qualified immunity is "an immunity from a suit rather than a mere defense to liability, [thus it is important to resolve] immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 112 S.Ct. 534, 536 (1991).
 
 
 15
 Washington sets out the procedure for reviewing a qualified immunity issue in the context of summary judgment.
 
 
 16
 When a claim to qualified immunity is raised within the context of a motion for summary judgment, the non-movant must allege facts sufficient to indicate that the act in question violated clearly established law at the time the act was committed. See Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987).... Thus, the plaintiff must effectively pass two hurdles when facing a defendant on summary judgment who claims qualified immunity. First, the allegations must "state a claim of violation of clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 ... (1985). Second, the plaintiff must present "evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts."
 
 
 17
 Washington, 977 F.2d at 994 (citing Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992)).
 
 
 18
 In determining whether law was clearly established at the time defendant acted, this court must first necessarily determine whether the violation asserted by the plaintiff actually violates the constitution and then determine whether the constitutional right violated was a right at the time the actions by the defendant were taken. Rich v. City of Mayfield Heights, 955 F.2d 1092 (6th Cir. 1992) (citing Siegart v. Gilley, 500 U.S. , 111 S.Ct. 1789, 1793, (1991)).
 
 
 19
 Ciak claims Officer Lasch violated his right not to be arrested without probable cause. Arrest without probable cause violates the Fourth Amendment. Beck v. Ohio, 379 U.S. 89, 90-91 (1964). This was a constitutionally established right at the time of the events in question. However,
 
 
 20
 [A]rrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law. [citation omitted]. The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."
 
 
 21
 Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988) (citing Michigan v. DeFillippo, 443 U.S. 31, 36-37 (1979)). Thus, the district court must determine whether the facts in the record support a finding of probable cause. "If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant." Id. According to Poe v. Haydon
 
 
 22
 Since this inquiry will turn on the circumstances with which the official is confronted, and often on the information that he possesses, the district court must consider all the undisputed evidence produced as a result of discovery, read in the light most favorable to the non-moving party. [citation omitted].... [S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.
 
 
 23
 853 F.2d 418, 425 (6th Cir.) cert. denied, 488 U.S. 1007 (1989) (emphasis added). See Rich, 955 F.2d at 1095 (holding in the absence of a factual dispute, the district court is required to determine whether police officer's conduct was contrary to conduct reasonable officers would have taken); see also Washington, 977 F.2d at 994-95 (holding where there existed a genuine issue of material fact, the district court did not err in refusing to grant qualified immunity).
 
 
 24
 The question of immunity in the instant case turns on "whether a reasonable person in possession of the facts known by Officer Lasch would believe that the Plaintiff was violating KRS 189A.010." Ciak v. City of Louisville, et al., No. C-91-0745-L(J) (W.D. Ky Aug. 13, 1993)
 
 The district court correctly concluded
 
 25
 By necessity, reliance must be placed on the individual officer to observe and evaluate the behavior of the suspect. General appearance and attitude are legitimate aspects of this evaluation. More important however, is coordination and level of mental awareness. These aspects are in dispute in this case, because the parties disagree as to the central issue of Plaintiff's performance of field sobriety tests....
 
 
 26
 The defense of qualified immunity shielding the defendants from trial must be denied. Where there are genuine issues of material fact surrounding an arrestee's conduct, it is impossible for the court to determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct violated clearly established law. In this instance, the question turns on the same disputed facts central to the probable cause inquiry. See e.g. Washington v. Newsom, 977 F.2d 991 (6th Cir. 1992); Wagenmann v. Adams, 829 F.2d 196 (1st Cir. 1987). Therefore the motions for summary judgment are DENIED.
 
 
 27
 Id.
 
 
 28
 After a careful review of the record, it is clear several factual disputes exist central to the determination of whether Officer Lasch could have reasonably believed probable cause existed to arrest Ciak. The record evidences disputes regarding, inter alia, whether Officer Lasch approached the car while Ciak was still inside it, whether Officer Lasch correctly performed the nystagmus test, how many times Officer Lasch performed the alphabet test, and whether Officer Lasch observed Ciak wobbling, slurring his speech or lacking coordination.
 
 
 29
 Officer Lasch relies on Walton, supra, to argue "[s]ince the question [of whether a law is clearly established] is one of law, the trial court could not, by characterizing it as a disputed factual issue, avoid deciding [the issue]." 995 F.2d at 1336. However, Walton also recognizes that "if genuine issues of material fact exist as to whether the defendants actually did commit acts that would violate a clearly established right, then summary judgment on qualified immunity is improper." Id. Thus Officer Lasch's arguments fail.
 
 IV. Conclusion
 
 30
 For the reasons stated above, we AFFIRM the decision of the Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky at Louisville.